OPINION OF THE COURT
Rolando T. Acosta, J.
Plaintiff moves for an order granting summary judgment against defendant Joel Anthony Pope & Associates, Inc. (hereinafter Pope), an auctioneer who sold plaintiff’s car at the request of a garage keeper claiming a lien on the car. The motion requires the court to decide an issue which has not received much written attention from the courts: whether an auctioneer who sells property pursuant to the request of a purported lienor may be held liable for conversion to the true owner of the property where it turns out that the notice of the lien and sale on the transferred property was defective.[1]
Background and Contention of the Parties
Plaintiffs car was seized by the New York City Marshall on or about August 12, 1992, because of plaintiffs failure to pay outstanding parking tickets. Pursuant to the Marshall’s authorization, P & N Recovery of New York, Inc. (hereinafter P & N) towed plaintiffs vehicle and stored it at P & N’s garage. After storing the car for nine months, P & N, seeking payment of its alleged storage fees, hired defendant Pope to auction the car in June of 1993. The auction was held at defendant P & N’s garage and Louis Concepcion, an employee of P & N, was the only bidder present. Defendant auctioneer ultimately sold the car to defendant P & N for $1,500, which plaintiff claims was substantially below the fair market value of $8,500.
Plaintiff now moves for summary judgment on the grounds that, inter alla, plaintiff never received notice of the lien or notice of the sale, as statutorily required by Lien Law § 184 (2) and § 201, respectively. In support of his argument, plaintiff alleges that P & N failed to serve the notice of the lien within *344 five days of the initial tow and storage of the vehicle as required by Lien Law § 184 (2). Plaintiff further alleges that defendant P & N’s alleged notice of sale was ineffective because it contained gross misrepresentations regarding, inter alla, the duration of the storage,[2] it was sent by certified mail, return receipt requested (rather than certified mail, as required by Lien Law § 201), and it was not sent by the alleged lienor, P & N (as required by Lien Law § 201), but instead was sent by Pope — an entity which was unknown to plaintiff. In short, plaintiff contends that defendant auctioneer did not have the right to sell his car because P & N failed to comply with the foregoing statutory service-of-notice requirements, thus rendering the alleged lien unenforceable, the sale unauthorized and defendant auctioneer liable.
Defendant Pope, on the other hand, argues that it cannot be liable because it sold the vehicle in complete good faith and without any knowledge of a defective lien. Defendant claims that it reasonably believed that P & N had a valid lien interest and the accompanying authority to sell the vehicle. Defendant auctioneer alleges, for example, that (a) the vehicle had been kept in storage for 10 months without any known objection from the owner, (b) defendant P & N provided Pope with a copy of an “Authorization to Foreclose” which indicated the amount due for storage and towing, (c) defendant P & N provided the defendant auctioneer with the signed notice of lien and sale which was sent to plaintiff, and (d) the notice of sale was published twice in a local newspaper. At the very least, the foregoing facts, according to defendant Pope, demonstrate that the true owner acquiesced in or consented to the sale by effectively abandoning the car.
The Garage Keeper’s Failure to Comply with the Lien Law
Lien Law § 184 (2) provides that when a vehicle is towed at the request of a law enforcement officer, a garage keeper is required to servé a vehicle owner with detailed notice of the tow and storage of the vehicle within five days of the initial tow. Notice shall be sent certified mail, return receipt requested, notifying the owner of the claimed lien, and shall “contain [ ] the name of the person who towed and is storing said motor vehicle, the amount that is being claimed for such towing and storage, and the address and times at which said mo *345 tor vehicle may be recovered.” (Lien Law § 184 [2].) A garage keeper who “fails to mail such notice within said five day period shall only be entitled to a lien for storage from and after the date that the notice was mailed.” {Ibid.)
Further, Lien Law § 201 provides, in pertinent part, that should the alleged lienor wish to enforce its lien, the lienor is required to serve a detailed notice of sale “upon the owner * * * by mailing it to the owner at his last known place of residence, or to his last known post-office address * * * by certified mail, or by first-class mail [with] * * * a certificate of mailing.” The notice of sale is ineffective if someone other than the lienor (i.e., a third-party auctioneer) serves the notice of sale, or if the notice of sale is sent in a manner not prescribed by the relevant statute. (See, Hsu v Emerson Collision, 126 Misc 2d 385 [Civ Ct, Kings County 1984].)
The garage keeper’s right to a lien for storage charges is purely statutory and since the foregoing statutory provisions confer privileges in derogation of common law, the statutory scheme — Lien Law § 184 et seq. — must be strictly construed. (Phillips v Catania, 155 AD2d 866 [4th Dept 1989].) Thus, should a garage keeper sell someone’s vehicle without strictly complying with the foregoing statutory provisions, the garage keeper would be guilty of conversion. (Supra; Ingram v Machel & Jr. Auto Repair, 148 AD2d 324 [1st Dept 1989]; Keleher v O. Edwin Barnes, Inc., 236 App Div 760 [2d Dept 1932]; Herschenhart v Mehlman, 125 Misc 887 [App Term, 2d Dept 1925]; Lewis v Jim's Boat Yard, 70 Misc 2d 425, 427 [Suffolk Dist Ct 1972]; see also, Wise & Co. v Rand McNally & Co., 195 F Supp 621, 628 [SD NY 1961].)
Here, P & N, the garage keeper, did not serve a notice of lien upon the plaintiff within five days of the initial towing and thus P & N was not entitled to a lien for storage from the date of towing. (Lien Law § 184 [2].) Nor did P & N serve plaintiff with the notice of sale by “certified mail, or by first-class mail [with] * * * a certificate of mailing.” (Lien Law § 201.) Instead, the notice of sale was sent by P & N’s agent/auctioneer, defendant Pope, by certified mail, return receipt requested, with defendant auctioneer’s return address and name appearing on the envelope — a name and address with which plaintiff was unfamiliar. Further, the notice of sale improperly claimed an amount which was clearly not due. Thus, it is undisputed that P & N failed to comply with the requirements of Lien Law § 184 (2) and § 201, and that P & N committed conversion in causing plaintiff’s car to be sold by the auctioneer. Indeed, P & *346 N has defaulted in this action and there is no question as to its liability.
The more difficult question which the court must resolve, however, is whether defendant Pope, as an agent/auctioneer of P & N, may be held liable for conversion under the circumstances of this case.
Liability of the Auctioneer
In general, an auctioneer may be held personally liable for conversion where the auctioneer sells property in behalf of a principal who, as it turns out, never actually had title to, or the authority to dispose of, the property. (See, Spraights v Hawley, 39 NY 441, 447 [1868]; Levy Bros. v Karp, 124 Misc 901 [Sup Ct, Monroe County 1924]; 7 NY Jur 2d, Auctions and Auctioneers, § 37, at 636; 18 Am Jur 2d, Conversion, § 72, at 193.) The true owner of the property, under these circumstances, would have a viable cause of action against both the principal and the auctioneer.
Further, an auctioneer may be liable even if the auctioneer acted in good faith and without knowledge of the principal’s lack of title or authority to sell. (Spraights v Hawley, supra, 39 NY, at 446; Levy Bros. v Karp, 124 Misc 901, supra; 2A NY Jur 2d, Agency, § 344, at 383; see also, Glass v Wiener, 104 AD2d 967, 968 [a “ ‘wrongful intention to possess the property of another [is not] an essential element of a conversion’ ”] [emphasis added].) Nor does it legally matter that the agent/auctioneer, in selling the property, may have been strictly complying with the principal’s specific instructions. (See, Ingram v Machel & Jr. Auto Repair, 148 AD2d 324, 325, supra [“agents of corporations are personally liable for their own acts which bring about a conversion of a third party’s property, and it is no defense to personal liability that the * * * agent may have been acting on behalf of a corporate principal”]; Page v Clark, 100 Misc 395, 402 [NY City Ct 1917].)
Although the foregoing rule of law, imposing as it does apparent strict liability upon auctioneers for conversion, may appear to be harsh, it is, as a matter of public policy, “designed to discourage larceny and the reckless sale of personal property” (Levy Bros. v Karp, supra, 124 Misc, at 902), and thus properly protects, as much as possible, the only truly innocent party in the equation — the true owner. (Spraights v Hawley, supra, 39 NY, at 447-448.) Significantly, the auctioneer can attempt to insulate itself from liability, or minimize its liability, by exercising extreme caution to ensure *347 that its principal has proper title to, or the authority to sell, the property which the principal seeks to have the auctioneer sell. (Supra.)
Furthermore, an auctioneer found liable to the true owner for conversion is not without a remedy of its own, since the auctioneer can promptly, or in the same action (CPLR 1007, 3019), seek indemnity from the principal. (Spraights v Hawley, supra, 39 NY, at 446; cf., Lewis v Jim's Boat Yard, 73 Misc 2d 24 [Suffolk Dist Ct 1973] [after true owner commences action against alleged lienor, alleged lienor files third-party complaint against auctioneer claiming defects in notice of sale were attributable to auctioneer].) Auctioneers are essentially charged with knowing that possession does not equate with, and does not confer upon the possessor/principal, ownership of, or title to, the possessed property.
The harshness of the rule is further mitigated by an important, though rarely applied, exception thereto. Pursuant to this exception, an auctioneer would not be liable to the true owner if it can be said that the true owner constructively or expressly consented to, or acquiesced in, the sale of the property, or otherwise engaged in negligent or intentional conduct which misled the principal. (See, Pease v Smith, 61 NY 477, 486 [1875]; Spraights v Hawley, 39 NY 441, 448, supra; see also, 7 Am Jur 2d, Auctions and Auctioneers, § 85, at 427-428; Annotation, Personal Liability of Auctioneer to Owner or Mortgagee for Conversion, 96 ALR2d 208, 212, § 3.) This exception is properly based upon principles of estoppel and basic fairness.
Here, defendant auctioneer argues that it cannot be liable for conversion of the plaintiff's vehicle because defendant acted in complete good faith and without the slightest knowledge that the required notices were defective. Defendant alleges, for example, that the vehicle had been kept in storage by the garage keeper for 10 months without any known objection from the plaintiff and that plaintiff did not even begin inquiring about his vehicle until almost eight months after it was initially towed. Further, prior to the actual sale, defendant P & N provided defendant Pope with a copy of an “Authorization to Foreclose” and the actual signed notice of lien and sale sent to plaintiff — both of which indicated the amount due for storage and towing and the duration of the storage. Finally, defendant auctioneer itself caused the notice of sale to be published twice in a local newspaper prior to the actual sale. The foregoing facts, according to defendant Pope, amply demonstrate that *348 Pope had absolutely no reason to believe that defendant P & N lacked the necessary authority to sell the plaintiffs vehicle.
The problem with defendant Pope’s argument is that good faith and lack of knowledge is simply not a defense to conversion (Spraights v Hawley, supra, 39 NY, at 446; Levy Bros. v Karp, 124 Misc 901, supra; 2A NY Jur 2d, Agency, § 344, at 383), and it is immaterial that defendant Pope may have been acting on behalf of the garage keeper. Thus, the plaintiffs motion for summary judgment cannot be withstood on this ground alone.
The facts alleged in support of defendant’s attempted good-faith/lack-of-knowledge defense, however, do raise material issues of fact regarding the applicability of the exception to the general rule — that is, the question of whether plaintiff constructively consented to, or acquiesced in, the public sale of plaintiffs car by failing to inquire about the car for eight months after it was towed for nonpayment of parking tickets, or by failing to respond to the notice of sale or the publication thereof. (Pease v Smith, supra, 61 NY, at 486; Spraights v Hawley, supra, 39 NY, at 448.)
Although the foregoing facts, from which one may reasonably infer that plaintiff may have effectively abandoned the car, just barely meet the threshold to withstand the motion for summary judgment, they do present factual questions which must be resolved at a trial. Accordingly, plaintiffs motion for summary judgment is hereby denied.

. In addition to his cause of action for conversion, plaintiff also asserts a claim of “commercially unreasonable sale.” Plaintiff alleges, in short, that the defendants sold plaintiffs vehicle at the auction for an amount far less than the fair market value. Because material issues of fact clearly exist with respect to the commercial reasonableness of the sale, that portion of plaintiffs motion seeking summary judgment on this particular cause of action is denied. Likewise, plaintiffs motion seeking summary judgment on his cause of action for punitive damages is denied.

. Specifically, plaintiff alleged that the notice of sale illegally charged plaintiff for storage for a 28-day period prior to the actual towing of the vehicle.